v. Niantic, Inc. v. Niantic, Next case is Location Based Services v. Niantic, Inc., 2018-14-64. Mr. Messand. May it please the Court. I'd like to start off by saying that this is an atypical case because the specification here doesn't really talk about the prior art. It doesn't provide guidance about what problems existed in the prior art or what was conventional as opposed to what was unconventional in the prior art. Here, though, the district court ruled without any discovery, without any guidance in the record either way about what was conventional or what was problematic in the prior art, that the claims do not solve a technological problem and that only conventional activity was claimed. Can't we just read the claim? Your Honor, I would say that the claim should be the most instructive information about what was conventional and what was not. Well, what is claimed? But as far as what was conventional. They recite receiving a request for a map display determining a status, generating a signal. It sounds like passing information back and forth. Correct, Your Honor, but then there are some other limitations about interacting with monitoring devices, applying location interaction rules and user interaction rules. Isn't a rule an abstraction or an abstraction? Perhaps the rule itself is, but the interaction with a monitoring device and a method that requires you to interact with a monitoring device I would say is not an abstraction. And then to the point of whether or not the claim itself could be relied on to determine what was conventional, I wouldn't say that that's necessarily the case. It's not like the claim says this is what was done in the past or this is what the prior art has seen or this was what was well known. You know, the claim may, you might be able to infer that the claim is describing what's not well known. That's what a claim is supposed to be about, but I don't think that it would be fair to say that you could infer that what is claimed is well known from the claim itself. So here, as I was discussing, the specification doesn't describe what was, what technological problems existed or what was conventional as opposed to not conventional. But still, the magistrate judge opined that the defects in the complaint here cannot be cured by amendment. This court, subsequent to the magistrate judge's opinion in the Atrix case, stated that or made it clear that this may not be the case. That in, at least in some instances, amendments can be used to cure a defect related to what was conventional and not conventional. Am I remembering right that you did not ask for an amendment? We did not ask for leave. And I'm not remembering, at least from your brief, whether you said, if we had been granted the opportunity to amend, here's what we would have added to the complaint. We didn't specify it. We generally stated we would have added allegations related to what was conventional and what was not conventional. It's a little hard for us to evaluate in the abstract whether an amendment would have been futile without being given something concrete about what would have been in the amendment. So here in our inventive concept arguments with respect to, you know, the step two analysis, we specify what we are alleging or what we are contending is unconventional. And those are the things that we would be wanting to essentially plead through amendment. So we think that, you know, given the history here that the appellant should be at least permitted to submit an amended complaint that would allow to add allegations regarding what was conventional activity and what was not, and maybe what was a technological problem that existed in the prior art. Moving to the claims themselves, the district court, we contend, overlooked and minimized limitations that show that the claims do not only result in a stating a problem or a stating a result, but they also clearly state a way of achieving it. Taking, for example, Claim 5 of the 996 patent, it requires interacting with monitoring devices to alter a map and that the alteration be a function of location interaction rules as modified by user interaction rules. This is not just the result, but the way of achieving the result and, you know, the claimed goal here is providing map-related data, and this claim specifies how you would achieve that goal. Therefore, this claim wouldn't be directed to an abstract idea. These similar limitations appear in Claim 1 of the 648 patent, Claim 1 of the 114 patent, Claim 7 of the 610 patent. In addition, some of the dependent claims specify the rules that would apply. So, this is also adds specificity to the way of achieving the claim result. An example would be Claim 8 of the 996 patent. Here we also contend that the claims do not merely disclose generic devices performing generic functions. We've argued that display devices interacting with monitoring devices that are capable of providing a user interaction with a location, which is required by most of the claims, is inventive and unconventional, and, Your Honors, if we were provided the opportunity to amend, we would make allegations related to this as being unconventional activity. And at best, anything in the record that contradicts this, other than the judge's order, would be attorney argument. Several dependent claims also add additional specificity that relate to more than simple post-solution activity. Some of the claims require, for example, Claim 11 of the 648 patent requires activation of metadata. In this scenario, I think there's an example in the specification that shows that more information could be shown on the map if a person is at a particular location, et cetera, that kind of an embodiment. So we contend that these claims do not relate to well-known concepts or conventional activities, and therefore they are patent eligible, as they at least disclose an inventive concept. So at the very least, we think we are entitled, we should be entitled to seek leave to amend the complaint to address these issues. I think that one kind of underlying issue as well is here, the judge inferred these things about conventionality, and he made these inferences not in plaintiff's favor, which also I think is improper. And I think if there are no further questions, I'll reserve my time. We will save your time, Mr. Messam. Mr. Snyder. Good morning, Your Honors, and may it please the Court, Darren Snyder on behalf of Appellee Niantic, Inc. I'd like to make only two points this morning. First, despite numerous opportunities, the appellant, Location-Based Services, has never identified any problem that these patents and the inventions they purportedly contain attempt to solve. Likewise, despite numerous opportunities, the plaintiff and appellant has never identified how, in particular, these purported inventions purport to solve those problems. We are left to guess that. And that, in this course of jurisprudence, helps us understand that these are the very kinds of claims that attempt to claim abstract ideas and are patent-illegible. The second point, Your Honor, relates to… It's not so much a question of whether they've identified a problem. One can claim a method that is tangible and achieves things, even if there wasn't a pre-existing problem, if it's new or not obvious. And that would pass muster under 101. The question here is whether the claims simply recite abstract ideas. That's exactly right, Your Honor. The claims that have been found patent-eligible by this Court in addressing 101 always identify how something is done, not simply what is being done. And the fundamental problem with the claims in these patents is that they repeatedly describe what is to be done, but they never give any indication of how that is to be done. So, for example, when they refer to a monitoring device that provides information about a user, it stops and says, have a monitoring device that provides information about a user. But it never describes how that is to be done. It never gives us anything to examine about whether that would be novel or not obvious. It's just the idea of a monitoring device that provides information about a user. The second point, Your Honor, or Your Honors, is that despite numerous opportunities, LBS has never identified any fact questions that have to be resolved in order to determine the patent eligibility of any of these claims. It did not do so in the District Court. It did not identify any fact issues. It did not seek to amend the claims. It did not submit any factual information or evidence as part of the motions. And then once on appeal before this Court, although it asked the Court to give it the courtesy of a remand, it can't identify a single question, a factual issue, that would have to be resolved by the Federal District Court in determining the issue of 101, patent eligibility. We urge that the Court affirm the dismissal and judgment of the District Court, unless there are any further questions. Thank you very much, Your Honor. Thank you, Mr. Snyder. Mr. Messand has some rebuttal time, if you wish to use it. I think I would respectfully disagree with my colleague about whether or not LBS has raised a problem or also raised a fact question. Now, I will concede that the specification doesn't identify a particular problem, but we have argued in our briefing that what the invention does is add new functionality to electronic maps that previously didn't exist. And in that respect, we would say it solves a problem with preexisting electronic maps. And then with respect to the fact question, again, I think in our briefing related to the inventive concept, we repeatedly claim that the method of using monitoring devices that interact with a display device and alter a map based on a status that is determined by interaction rules is unconventional activity. And that certainly is at least a fact question that we have raised. And unless there are any questions, I have nothing further. Thank you, counsel. We'll take the case under advisement. All rise.